## CONFIDENTIAL SETTLEMENT AGREEMENT AND GENERAL RELEASE

This Settlement Agreement and General Release (the "Agreement") is made between LORI WILLIAMS, (hereinafter referred to as "Plaintiff," a term which includes Plaintiff's successors, assigns, beneficiaries, personal representatives, and heirs), ONE HOMECARE SOLUTIONS, LLC, (hereinafter referred to as "Defendant," a term which includes Defendant's officers, directors, shareholders, members, attorneys, principals, agents, servants, representatives, employees, insurers, subsidiaries, predecessors and successors in interest). Plaintiff and Defendant may collectively be referred to as the "Parties".

WHEREAS:

A. On August 30, 2015, Plaintiff filed a lawsuit against Defendant in the United States District Court, Southern District of Florida, styled *LORI WILLIAMS v. ONE HOMECARE SOLUTIONS, LLC*, Case No.: 1:15-CV-22831-DPG (hereinafter the "Civil Action").

B. Plaintiff, among other things, claims that she is entitled to but did not receive from Defendant certain overtime wage compensation allegedly owed to her pursuant to the Fair Labor Standards Act of 1938, ("FLSA") as amended (the "Alleged Compensation Amount").

C. Defendant disputes and denies that Plaintiff is entitled to receive the Alleged Compensation Amount or any part thereof.

D. There are bona fide disputes between Defendant and Plaintiff as to whether Plaintiff is entitled to receive the Alleged Compensation Amount or any part thereof.

E. Defendant denies each and every material allegation set forth in the Civil Action and denies having committed any wrong or causing any injury to Plaintiff.

F. In order to avoid the further costs and burdens of litigation, Defendant and Plaintiff now desire to settle fully and finally any and all differences between them, including, but not limited to, those differences embodied in the Civil Action.

NOW, THEREFORE, Defendant and Plaintiff incorporate the above listed recitals and agree as follows:

1. For and in consideration of the promises outlined in Paragraph 2 of this Agreement and other good consideration, and upon delivery of the consideration set forth in Paragraph 2, Plaintiff agrees as follows:

   A. To settle all of the claims and actions between Plaintiff and Defendant which are the subject matter of the Civil Action, and release and forever discharge Defendant and the Defendant's parent companies, subsidiaries, divisions, predecessors, successors, heirs, executors, administrators, assigns, shareholders (direct or indirect), directors, officers, employees, agents, and attorneys (and the shareholders directors, officers, employees, agents, and attorneys of such

parent companies or subsidiaries), ONE HOMECARE SOLUTIONS, LLC, from all and any manner of actions, causes of actions, suits, rights to attorney fees, debts, claims and demands whatsoever in law or equity by reason of any matter, cause or thing whatsoever, by reason of any claims or actions for overtime or any other alleged violations of the Fair Labor Standards Act which are the subject matter of the Civil Action, and any other alleged violations arising from Plaintiff's relationship with Defendant, including but not limited to claims of retaliation and/or discrimination.

B. To settle all claims herein, and hereby *release and forever discharge* Defendant and Defendant's parent companies, subsidiaries, divisions, predecessors, successors, heirs, executors, administrators, assigns, shareholders (direct or indirect), directors, officers, employees, agents, and attorneys (and the shareholders directors, officers, employees, agents, and attorneys of such parent companies or subsidiaries), ONE HOMECARE SOLUTIONS, LLC, from all actions, causes of action, debts, sums of money, accounts, covenants, contracts, agreements, promises, damages, judgments, claims, and demands whatsoever, *whether known or unknown*, either in law or equity, whether statutory or common law, whether federal, state, local, or otherwise, including, but not limited to, any claims related to, or arising out of any aspect of Plaintiff's relationship with Defendant, any agreement concerning such relationship, or the termination of such relationship, including, but not limited to:

(i) any and all claims asserted, or which could have been asserted, in the Civil Action, including, but not limited to, any and all claims under the Fair Labor Standards Act of 1938, as amended;

(ii) any and all claims of wrongful discharge or breach of contract, any and all claims for equitable estoppel, any and all claims for employee benefits, including, but not limited to, any and all claims under the Employee Retirement Income Security Act of 1974, as amended, and any and all claims of employment discrimination on any basis, including, but not limited to, any and all claims under Title VII of the Civil Rights Act of 1964, as amended, under the Age Discrimination in Employment Act of 1967, as amended (the "ADEA"), under the Civil Rights Act of 1866, 42 U.S.C. § 1981, as amended, under the Civil Rights Act of 1991, as amended, under the Americans with Disabilities Act of 1990, as amended, under the Immigration Reform and Control Act of 1986, as amended, under the Family and Medical Leave Act of 1993, as amended, under the Florida Civil Rights Act of 1992, as amended, under the Florida Equal Pay Law, as amended, under the Florida Wage Discrimination Law, as amended, and under the Florida Minimum Wage Law, and the Older Workers' Benefit Protection Act.

(iii) any and all claims under any other federal, state, or local wage and hour law, employment law, labor law, civil rights law, human rights law, or workers' compensation law and all other statutory and common law causes of action relating in any way to Plaintiff's relationship with Defendant, any agreement concerning such relationship, or the termination of such relationship, or otherwise, and whether such claims are now known or unknown to Plaintiff, from the beginning of the world to the effective date of this Agreement, except that this release does not compromise, waive, or prejudice any claims for unemployment compensations benefits or any claims arising from work-place injuries, including but not limited to claims for worker's compensation benefits or worker's compensation relief.

1234154v1 997224 0002

(iv) any and all claims of slander, libel, defamation, invasion of privacy, intentional or negligent infliction of emotional distress, negligent misrepresentation, fraud, negligent hiring, supervision or retention, assault and battery, and prima facie tort; and

(v) any and all claims for monetary recovery, including, but not limited to, back pay, front pay, liquidated, compensatory or punitive damages, attorneys' fees, experts' fees, disbursements, and costs; which, against Defendant, Plaintiff or her heirs, executors, administrators, successors, and assigns ever had, now has, or hereafter can, will, or may have, for, upon, or by reason of any matter, cause, or thing whatsoever from the beginning of the world to the date Plaintiff executes this Agreement.

C. To agree and acknowledge that this settlement is the compromise of a disputed claim and does not constitute an admission by Defendant of any violation of any federal, state, or local statute or regulation, or any violation of any of Plaintiff's rights or of any alleged duty owed by Defendant to Plaintiff.

D. Not to disclose the terms of this Agreement to anyone except the attorney representing Plaintiff in this matter, Plaintiff's tax advisors, and/or Plaintiff's respective spouses or as compelled by force of law as more fully set forth in Paragraph 8 (a)-(c) below.

E. As part of this Agreement, Plaintiff agrees not apply for employment with Defendant. Plaintiff agrees that her agreement not to seek future employment is purely contractual and is in no way involuntary, discriminatory, or retaliatory.

F. Excepting only the Civil Action, Plaintiff represents and warrants that she has never commenced or filed, any action, charge, complaint, or other proceeding, whether administrative, judicial, legislative, or otherwise, including, but not limited to, any action or proceeding for attorneys' fees, experts' fees, disbursements, or costs, based upon or seeking relief on account of actions or failures to act by Defendant, which may have occurred or failed to occur before her execution of this Agreement.

G. If any government agency or court or other tribunal assumes jurisdiction of any charge, complaint, cause of action or claim covered by this Agreement against Defendant on behalf of or related to Plaintiff, Plaintiff agrees that she will waive her right to payment of damages awarded in such case since she has agreed to the consideration set forth herein.

2. For and in consideration of this Settlement Agreement and the mutual promises contained herein, and in full, final and complete settlement of the Civil Action and any claims Plaintiff may have asserted in the Civil Action in connection with Plaintiff's relationship with Defendant, Defendant agrees to pay to Plaintiff a total of $6,000.00 (hereinafter the "Settlement Amount"), inclusive of all damages, attorneys' fees, and costs. The settlement proceeds will be paid as follows:

    A. Plaintiff is receiving a total of $3,000.00, for which Defendant will issue a Form 1099.

B. Plaintiff's counsel is receiving a total of $3,000.00 as fees and costs, for which Defendant will issue a Form 1099.

C. A check for the amounts reflected in subparagraphs A and B above shall be made out to "Loren Law Group, Trust Account f/b/o Lori Williams" and delivered to the Loren Law Group. Payment is to be made within 10 days of the Court entering an Order of Dismissal, as contemplated in Paragraph 5 below.

D. **Default Provision**: Should Defendant fail to make payments of the settlement funds pursuant to Section 2 of this Agreement, Plaintiff's counsel shall give written notice via email to Thomas P. White, Esq. at tpw@trippscott.com, and Sylvia Colon at sxc@trippscott.com with the subject line of the email containing the text, "URGENT- DEFAULT NOTICE- ONE HOMECARE SOLUTIONS, LLC" and provide Defendant with a 3 business days to cure the Default. If Defendant does not make timely payment as set forth herein and fails to cure within the 3 business days, then Plaintiff shall be entitled to seek judicial relief to enforce the settlement.

E. Plaintiff represents, warrants, and acknowledges that upon full and actual payment of the Settlement Amount, the Released Parties do not owe her any further wages, commissions, bonuses, vacation pay, costs, fees, or other compensation or payments of any kind or nature. Plaintiff further agrees and understands that the amounts paid by or on behalf of the Released Parties pursuant to this Agreement are being paid strictly and solely for purposes of settlement and that the Released Parties expressly deny that Plaintiff is entitled to receive the Settlement Amount or any part thereof.

3.   Plaintiff agrees that if it is later determined by the Internal Revenue Service that taxes or lawful withholdings should have been deducted from any non-wage payment being made hereunder, Plaintiff will indemnify and hold Defendant harmless and assume any and all liability for any taxes, interest, or penalties assessed on the payment being made for any taxes that are or were Plaintiff's legal obligations to pay, if any.

4.   Defendant shall issue the appropriate tax forms for the payment set forth in Paragraph 2, above. Plaintiff agrees and acknowledges that, as allocated pursuant to applicable law, she will be solely responsible for the payment of any and all taxes with respect to the non-wage payments referenced in Paragraph 2, but not for any taxes that are or were Defendant's lawful obligation to pay, if any. Plaintiff also agrees to execute a W-9 form contemporaneously with this Agreement.

5.   The Parties agree to file a joint stipulation for dismissal with prejudice of all claims in this Civil Action within five (5) business day of receiving a fully executed copy of this Agreement. Plaintiff's and Defendant's counsel further agree to take whatever actions are necessary to effectuate the dismissal with prejudice of the Civil Action, including, but not limited to, filing additional motions should the court require it. The parties agree that the joint stipulation for dismissal shall include language requesting the Court to maintain jurisdiction to enforce the terms of this Agreement.

6. Plaintiff represents, warrants, and acknowledges that upon full and actual payment of the Settlement Amount, Defendant does not owe her any further wages, commissions, bonuses, vacation pay, or other compensation or payments of any kind or nature, other than as set forth in this Agreement. Plaintiff further agrees and understands that the amounts paid by or on behalf of Defendant pursuant to this Agreement are being paid strictly and solely for purposes of settlement and that Defendant expressly denies that Plaintiff is entitled to receive the Settlement Amount or any part thereof.

7. Plaintiff represents, warrants, and acknowledges that there are bona fide disputes between her and Defendant as to whether she is entitled to receive the Alleged Compensation Amount or any part thereof.

8. (a) Plaintiff agrees, represents and warrants that she (i) has not enticed, solicited, prompted, encouraged or otherwise assisted any other former or current employee or independent contractor of Defendant to file a claim or action against Defendant and that she (ii) will not entice, solicit, prompt, encourage or otherwise assist any other former or current employee or independent contractor of Defendant to bring a claim or action against Defendant.

(b) The Parties acknowledge that maintaining confidentiality with respect to this Agreement is of paramount importance. Accordingly, the Parties represent and warrant that they, except as pursuant to subpoena or other legal compulsion, covenant and agree that they will keep the terms and facts of this Agreement strictly confidential, and will not disclose (whether verbally, in writing, or through non-verbal means, or otherwise) any information concerning this Agreement to any person, firm, corporation, governmental agency, or other entity. This prohibition does not apply to any filing or related communication with any federal, state or local tax or revenue authority, or to communications with counsel, her spouse or professional tax advisors, who agree in advance to be similarly bound. Upon inquiry to the Parties by any third party, other than those listed in the preceding sentence, as to anything related to the Civil Action, including but not limited to the filing or resolution of same, any response shall be strictly limited to the following verbal communication: *"The matter has been resolved and I cannot discuss it any further."* Specifically, Plaintiff further agrees that she will not disclose any documents or records obtained from Defendant as part of this Civil Action. Nothing contained in this Agreement shall be construed as preventing any Party from participating in, or cooperating with, any state or federal proceeding or investigation.

(c) In the event of any proven violation by Plaintiff of the representations, warranties, agreements, or covenants contained in Paragraphs 8(a) and 8(b) above, Defendant will be entitled to seek from Plaintiff any and all proven damages resulting from or caused by such violation. Additionally, and notwithstanding any other remedies that also may be available to Defendant by law, in the event of any violation by Plaintiff of any of the representations, warranties, agreements, or covenants contained in Paragraphs 8(a) and 8(b) above, Defendant will be entitled to seek from Plaintiff reasonable attorney's fees and costs expended in enforcing the confidentiality provision and any proven damages resulting from the breach.

9. The parties acknowledge that maintaining each other's good reputation in the community is of *paramount importance* to one another. Accordingly, Plaintiff represents and warrants that

she will not disparage Defendant by any type of communication, whether verbally, in writing, or otherwise. For purposes of this paragraph the term "disparagement" is defined as a false statement or other false statement reasonably designed to cast another party in a negative light. Defendant represents and warrants that it will not disparage Plaintiff by any type of communication, whether verbally, in writing, or otherwise. Statements made by Defendant's current or former employees, contractors, and/or representatives cannot be attributed to Defendant for purposes of this provision and cannot be considered a breach of this provision, unless it is proven that Defendant encouraged or incited the disparaging statements to be made. Defendant agrees that if any prospective employer of Plaintiff contacts it, Defendant shall provide a neutral reference letter, on Defendant's usual company letterhead, describing the date of the relationship between Plaintiff and Defendant, the services provided, and the rate of pay if asked. . All requests for references shall be sent in writing to the Company.

10. No cancellation, modification, amendment, deletion, addition, or other changes in the Agreement or any provision hereof or any right herein provided shall be effective for any purpose unless specifically set forth in a subsequent written agreement signed by both Plaintiff and Defendant.

11. Should any provision of this Agreement be declared or determined by any court of competent jurisdiction to be illegal or invalid, the validity of the remaining parts, terms or provisions shall not be affected thereby and said illegal or invalid part, term or provision shall be deemed not to be a part of the Agreement and all other valid provisions shall survive and continue to bind the parties.

12. This Agreement may be signed in multiple counterparts, and facsimiles or copies shall have the same force and effect as an original.

13. The law governing this Agreement shall be that of the United States and the State of Florida.

14. In the event any action is commenced to enforce this Agreement, the prevailing party shall be entitled to reasonable attorneys' fees and costs.

15. This Agreement is not, and shall not in any way be construed as, an admission by Defendant of any liability to, or of any unlawful or otherwise wrongful acts against, Plaintiff or any other person, and Defendant specifically disclaims any liability to, or any unlawful or otherwise wrongful acts against, Plaintiff or any other person on the part of Defendant. This Agreement shall not be admissible or discoverable in any court or administrative proceeding other than as necessary in an action or proceeding for the express purpose of enforcing or construing this Agreement.

16. Plaintiff expressly represents, warrants, and acknowledge that the terms and provisions of this Agreement herein stated are the only consideration for signing this Agreement; that no other promise or agreement of any kind has been made by, to or with any person or entity whatsoever to cause the signing of this Agreement; and that, in executing this Agreement, she does not rely and has not relied upon any representation or statement made by Defendant or by any of

Defendant's agents, representatives, or attorneys with regard to the subject matter, basis, or effect of this Agreement or otherwise.

17. Plaintiff represents and acknowledges that her signature hereon shows that she has decided, knowingly, voluntarily, freely and without coercion, after consulting with appropriate legal counsel, to execute this Agreement in return for the consideration paid by Defendant, and that her signature appearing hereon is genuine.

18. Plaintiff agrees that she has had a period of at least twenty-one (21) days within which to consider whether to execute this Agreement and the releases provided herein. Plaintiff may actually accept and sign this Agreement at any time within this twenty-one (21) day period, but is not required to do so by Employer. In deciding whether to accept the terms of this Agreement, Plaintiff is also advised that she may revoke this Agreement and the releases provided herein within seven (7) days of its execution. It is specifically understood that the releases contained in this Agreement shall not become effective or enforceable until the seven-day revocation period has expired. Consideration for this Agreement and the releases herein will not be paid until the end of the seven-day revocation period. The Notice of Revocation should be hand delivered or sent via overnight mail to THOMAS WHITE , ESQ. TRIPP SCOTT, P.A. 110 SE Sixth Street, Suite 1500, Fort Lauderdale, FL with an email copy of the Revocation Notice being sent to Thomas White at tpw@trippscott.com, and Sylvia Colon at sxc@trippscott.com.

The words URGENT: REVOCATION NOTICE shall appear in the Subject line of the email.

19. Notwithstanding any other provision of this Agreement to the contrary, Defendant and Plaintiff agree that:

   (a) By entering into this Agreement, the parties do not waive rights or claims that may arise after the date this Agreement is executed.

   (b) This Agreement does not affect the rights and responsibilities of the U.S. Equal Employment Opportunity Commission (the "EEOC") or like agencies to enforce the ADEA and other laws, and will not affect or be used to interfere with Plaintiff's protected right to file a charge or participate in an investigation or proceeding conducted by the EEOC or like agencies. Plaintiff further agrees that she knowingly and voluntarily waives all rights or claims (that arose prior to her execution of this Agreement) that she may have against Defendant, to receive any benefit or remedial relief (including, but not limited to, reinstatement, back pay, front pay, damages, and attorneys' fees) as a consequence of any discrimination charge filed with the EEOC, or of any litigation concerning any facts alleged in any such charge.

20. **PLAINTIFF EXPRESSLY REPRESENTS AND WARRANTS THAT SHE (a) HAS CAREFULLY READ THIS AGREEMENT OR HAS HAD IT READ TO HER; (b) FULLY UNDERSTANDS THE TERMS, CONDITIONS, AND SIGNIFICANCE OF THIS AGREEMENT; (c) HAS HAD AMPLE TIME TO CONSIDER AND NEGOTIATE THIS AGREEMENT; (d) HAS HAD A FULL OPPORTUNITY TO REVIEW THIS AGREEMENT WITH HER ATTORNEYS, LOREN LAW GROUP (JAMES M. LOREN,**

ESQ.), AND HAS DONE SO; AND (e) HAS EXECUTED THIS AGREEMENT VOLUNTARILY, KNOWINGLY, AND WITH THE ADVICE OF HER ATTORNEYS.

DATE: 10/26/15          Signature: _____
                                   LORI WILLIAMS


DATE: 10-26-15          Signature:
                                   ONE HOMECARE SOLUTIONS, LLC
                                   BY: _____
                                   TITLE: _____

                                   Cheri Rodgers
                                   Chief Operating Officer
                                   One Homecare Solutions
                                   3351 Executive Way
                                   Miramar, FL 33025

8

1234154v1 997224 0002